<u>UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK</u>

JOSEPH BRENNAN and CHRISTOPHER MASSETH,

  Movants,

v.

MYLAN INC., *et al.*,

  Respondents.

Case # 6:22-mc-06015

DECISION AND ORDER

# INTRODUCTION

Currently pending before this Court are two motions by non-party witnesses Joseph Brennan and Christopher Masseth (a) for an order quashing a deposition subpoena served on them by Defendants pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), and (b) for a protective order against obtaining any discovery from Movants pursuant to Fed. R. Civ. P. 26(c)(1).  ECF No. 1.  For the following reasons, Movants' motions are DENIED.

# BACKGROUND

The present motions arise out of a case currently pending in the District of Minnesota *In re: EpiPen Direct Purchaser Litigation*, 20-CV-00827.  Rochester Drug Co-Operative, Inc. ("RDC") is one of two named plaintiffs suing Mylan Inc., Mylan Specialty L.P. (collectively, "Mylan"), and other pharmacy benefit managers (collectively with Mylan, "Defendants"). ECF. No. 1-7 at 1.  RDC alleges that Mylan orchestrated a bribery and kickback scheme with the pharmacy benefit managers to increase the price of EpiPen. RDC alleges that the proceeds of the higher prices were used by Mylan to pay kickbacks to the pharmacy benefit managers and, in exchange for the kickbacks, the pharmacy benefit managers gave favorable placement to EpiPen in its formulaires to the exclusion of competing epinephrine auto-injector brands. ECF. No. 1-7 at

2-3, 5-6. As a result of the alleged favorable placement, the volume of EpiPen sales increased. ECF. No. 1-7 at 4. RDC alleges that it, and other direct purchasers, suffered harm by paying inflated prices for EpiPen at an increased volume. ECF. No. 1-7 at 6.

Fact discovery began in early 2021. ECF. No. 1-1 at 7. During this process, Defendants have deposed several former employees of RDC. From these depositions, the Defendants have learned that Masseth and Brennan had day-to-day managerial responsibilities at RDC directly related to the purchase and sale of EpiPen and other epinephrine auto-injectors. ECF No. 7-1 at 5. The Defendants served Masseth and Brennan with notice of deposition subpoenas in late October 2022. ECF No. 7-1 at 12.  Masseth and Brennan did not respond to the notice of deposition subpoena and instead filed the instant motion to quash the subpoena under Fed. R. Civ. P. 45(d)(3)(iv) and for a protective order under Fed. R. Civ. P.26(c)(1). ECF No. 7-1 at 12.

## DISCUSSION

1. **Motion to Quash the Subpoenas**

The Federal Rules of Civil Procedure permit subpoena recipients to move to quash the subpoena if they believe that compliance with the subpoena would subject them to an "undue burden." Fed. R. Civ. P. 45(d)(3)(iv). To determine whether an "undue burden" exists, courts in this district have generally considered the following four factors: "(1) relevance; (2) the party's need for the information; (3) the breadth of the request; and (4) the burden imposed." *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 251 (W.D.N.Y. 2018). The fourth factor requires consideration of the expense and inconvenience imposed by the subpoena. *See e.g., 1st United Telecom, Inc. v. MCI Commc'ns Servs., Inc.*, No. 3:10-CV-02255, 2012 WL 12884829, at *3 (N.D. Tex. Nov. 2, 2012) (identifying the fourth factor as "the expense and inconvenience imposed on a

non-party by a subpoena"). "[T]he burden of persuasion in a motion to quash a subpoena ... is borne by the movant." *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 251 (W.D.N.Y. 2018).

   A. <u>Relevance</u>

Relevancy, for the purposes of discovery, is broadly construed. *Matalavage v. Sheriff of Niagara Cnty.*, No. 20-CV-1254, 2023 WL 2043865, at *9 (W.D.N.Y. Feb. 16, 2023) ("Relevancy, for purposes of Rule 26(b)(1), is broadly construed"). Unlike the Federal Rules of Evidence, information sought in discovery need not make a disputed fact more or less likely. *Thuman v. Dembski*, 13-CV-01087, 2022 WL 1197551, at *5 (W.D.N.Y. Apr. 22, 2022) (relevant "material need not be admissible as evidence to be subject to discovery"). Instead, if the information could reasonably lead to other information that potentially bears on "or is germane to any issue in the case or that may become an issue," then it is relevant for the purposes of discovery. *Matalavage*, at *2.

In this case, RDC has alleged that Defendants conspired to inflate the sale price of EpiPen products in order to bribe certain pharmacy benefit managers to favor those products when placing them in the market. As a result of this alleged conspiracy scheme, the plaintiffs claim that they, and other direct purchasers of pharmacy products, were forced to overpay for EpiPen and suffered harm as a result. ECF No. 1-7 at 7. To be relevant, the information sought by Defendants need only potentially bear on any aspect of the foregoing allegations.

Brennan served as the Chief Operating Officer of RDC until his promotion to Chief Executive Officer, and he remained the CEO until 2019. Masseth served as the brand pharmaceutical buyer and then as the Chief Operating Officer until RDC filed for bankruptcy in 2020. In each of their roles, Movants were directly involved decision-making and contracting with

respect to EpiPen purchases, and at least one other deponent associated with RDC identified both as sources of information relating to fees received by RDC in buying and selling EpiPen. ECF No. 7-5 at 4. Since Movants were directly involved in the purchase and sale of EpiPen on behalf of RDC, and they both obtained and kept track of fees received by RDC from those sales, it is reasonable to conclude that they would have relevant information to offer that would "bear on or [be] germane to" issues related to whether RDC overpaid for EpiPen—an issue directly in dispute in this case. *Matalavage* at *2.

It does not change this court's position that each Movant has submitted a signed affidavit attesting that neither has any "recollection of RDC's purchase or sale of EpiPen." ECF No. 1-5 at 2. Such asserted lack of recollection is not sufficient to diminish the possibility that they possess relevant information. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04-CV-5316, 2006 WL 3476735, at *13 (S.D.N.Y. Nov. 30, 2006) ("There is simply no basis … to take at face value an assertion of lack of memory made in an affidavit by a witness.").

B. *Party's Need for the Information*

When determining a requesting party's need for information, the factors listed in Fed. R. Civ. P. 26(b)(2)(C) are instructive. *See Sky Med. Supply, Inc. v. Scs Support Claims Servs., Inc.*, No. 12-CV-6383, 2018 WL 7262251, at *2 (E.D.N.Y. Oct. 29, 2018). Under this rule, the court is required to limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). A discovery request is cumulative or duplicative if the requesting party already has the information that they are seeking to obtain. In those circumstances, the usual course of action is to limit or modify the discovery request upon motion. *See Bounkhoun v. Barnes*, No. 15-CV-631, 2020 WL 1526917, at *5 (W.D.N.Y. Mar. 30, 2020)

(modifying deposition subpoenas because the requestor already had access to certain information); *S.E.C. v. Chen*, No. CV157425, 2016 WL 3598108, at *5 (C.D. Cal. Feb. 4, 2016) (ordering that movants need not produce certain records to the extent they are already in the possession of the requestor).

However, the fact that a requestor may already be in possession of some related information does not always amount to a finding a discovery request is sufficiently cumulative or duplicative. *See Amphenol Corp. v. Fractus, S.A.*, No. 19 MISC. 160, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) (declining to quash subpoena even where the request was potentially duplicative). If the deposition subpoena recipient is likely to have more complete or better information, then the court may conclude that their deposition testimony is still necessary. *Id.* at *11 ("[B]ecause of the subpoena recipient's important role in [the] controversy… [i]t is, therefore, not unreasonable … to seek information relevant to these central issues from [the subpoena recipient], even if some of it may prove duplicative." (internal quotation marks omitted)).

The same principle applies considering convenience, burden, and expense. Courts generally require that the allegedly more convenient or less burdensome source be at least as reliable and robust as the subject of the subpoena. *See Buckhorn, Inc. v. Orbis, Inc.*, No. 10-MC-71, 2010 WL 4941726, at *1 (E.D. Wis. Nov. 30, 2010) (quashing the deposition subpoena for the former CEO of a company because "current ORBIS employees would also have the relevant knowledge."); *cf. In re Ramaekers*, 33 F. Supp. 2d 312, XX (S.D.N.Y. 1999) (ruling that although a declaration containing a witness's recollection of a conversation is more convenient, the audio recording of the conversation is still a better source and should be produced). In *Buckhorn*, the convenience of deposing existing current employees with relevant knowledge rather than the former CEO was merely a contributing factor to the court's decision. In reaching its decision to

quash, the court expressly relied on the fact that the company identified a particular current employee who "was involved in negotiating the agreements at issue" and was, therefore, a better source of the information that was sought from the former CEO. *Buckhorn* at *1.

Defendants assert that they are not already in possession of the information they seek—specifically, RDC's costs and payments related to EpiPen—and that such information is not available elsewhere. ECF No. 7-1 at 15. They support their assertions with copies of existing deposition testimony from other former RDC employees, who identify Masseth and Brennan as the source for that particular information. ECF No. 7-5 at 4. These deposition excerpts reveal to the court that the Defendants have tried to obtain this information from other sources, and in so trying, discovered that the best source of the information they seek is Masseth and Brennan. *See id.* ("Chris Masseth may be able to tell you that. Joe Brennan could tell you that.")

Movants contend that because they have handed over Masseth's deposition transcript conducted in similar cases involving different defendants that Defendants are already in possession of the information that they seek. ECF No. 1-1 at 7. Simply put, the possession of deposition transcripts from other cases performed by different lawyers on behalf of different defendants does not constitute the possession of the sought-after information that is the subject of the deposition subpoena in this case. Because the those defendants and the lawyers representing them were different than those who are parties to this case, they may have had different motivations, different strategies, and different legal contentions, and for that reason may not have asked questions that would reveal the information that Defendants seek here.

Movants next contend that deposing RDC through a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) is the better, more convenient source, but with the same stroke of the pen, Movants acknowledge that the representative's preparation for a rule 30(b)(6) deposition would

include consultation with them. ECF No. 1-1 at 13-14 ("RDC's designee's preparation will also include consultation with Mr. Masseth and Mr. Brennan"). The fact that the corporate representative would need to consult with the Movants on certain matters undermines both arguments regarding convenience and quality of the source. If the corporate representative was the better source, then Masseth and Brennan should assert that they would need to consult with such representative before being deposed rather than the other way around. Instead, this admission underscores the fact that Masseth and Brennan indeed may have unique personal information and that they are the best source for that information, corroborating the same assertions made by Defendants subsequent to their deposition of other former employees of RDC. Since a 30(b)(6) deposition of RDC is not the better source of the information Defendants seek, and as previously noted, the quality and robustness of the source of the information is more important than convenience, the Court concludes that a 30(b)(6) deposition is not the most convenient method of obtaining information directly in the personal knowledge of each Movant. Essentially the Movants' proposal amounts to an elementary school game of telephone, which in the end, will still impose on their time

      Based on the foregoing, this Court concludes that Defendants do not already have access to or possession of the information that they seek, nor is the information available from a source that is better than or more convenient than through a direct deposition of each of Movants. Accordingly, this court determines that Defendants are in need of this information, satisfying the second prong of the analysis.

    C. *<u>Breadth of the Request</u>*

Movants have not challenged the breadth of the deposition subpoena. Since the burden of persuasion in the motion to quash lies with Movants, the court will consider this issue settled in favor of Defendants.

D. *Expense and Inconvenience Imposed*

Next, the court will weigh the impact of the expense and inconvenience compliance with the subpoena will impose on Movants. Generally, non-parties are entitled to some consideration of time and expense. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y 1996). Nevertheless, Movants must allege, at a minimum, that the expense and inconvenience associated with complying with the subpoena will cause them to suffer a "clearly defined and serious injury." *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP address 173.63.148.25*, No. CV1910252, 2020 WL 5525549, at *3 (D.N.J. Sept. 14, 2020) (citations omitted). The court will not quash a subpoena, even for non-parties, for mere inconvenience if the subpoena seeks potentially relevant testimony. *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).

Movants contend that the deposition subpoena would impose an undue expense and inconvenience on their time as independent consultants and threaten the loss of income. ECF No. 1-1 at 15. Additionally, Masseth contends that a deposition would force him to arrange for alternative childcare. *Id.*

This court does not view the potential loss of income as rising to the level of a "serious injury," as the potential loss of income is only one of several relatively routine side effects of depositions. *Clayton v. Velociti, Inc.*, No. CIV A 08-2298-CM/GLR, 2009 WL 1033738, at *3 (D. Kan. Apr. 17, 2009) (depositions "often involve expense for transportation, sometimes overnight

lodging, and often some loss of income"). The court acknowledges that in *Clayton*, the moving party there was a party-plaintiff, but that fact does not detract from the reality that depositions always have a baseline level of expense and inconvenience. *See Spears v. First American eAppraiseIT*, No. XX, 2014 WL 1045998, at *4 (S.D. Ohio Mar. 14, 2014) ("[T]he mere fact that [the deponent] may have to take time off from work is not enough to warrant the 'extraordinary measure' of quashing the subpoena for her deposition."). Movants have not alleged any expense or inconvenience in excess of that baseline.

Furthermore, the potential loss of income asserted by the Movants is speculative in this case. Both Movants are self-employed, independent consultants, and as such, they each have the agency to arrange their own schedules in such a way as to not lose income as a result of this deposition. In fact, they are expected to do so, and should they fail to arrange their schedules in advance of the deposition that would be an income loss of their own making. *1st United Telecom, Inc.* at *3 (deposition witness "had ample notice to reschedule his business obligations, leads to the conclusion that any unfortunate inconvenience suffered by [him] as a result of the deposition is of his own making."). Defendants have even offered to host the depositions on the weekend and remotely over zoom. ECF No. 7-1 at 17. Hosting the deposition on the weekend greatly reduces the possibility that it would interfere with their work as independent consultants and employing the zoom platform will remove any burden of time and cost of travel, other routine inconveniences associated with depositions. The use of zoom will also likely reduce the burden of arranging for alternative childcare for Masseth.

Movants further argue that the expense and inconvenience of speculative income loss is undue because it is premature. The Movants contend that, regardless of how nominal the expense and inconvenience, Defendants should first seek a 30(b)(6) deposition of RDC before pursuing a

30(b)(1) deposition of each Movant. ECF No. 1-1 at 14 ("[M]ovants believe it would be most prudent for the EpiPen Defendants to depose RDC's 30(b)(6) witness first."). This argument is without legal merit as the federal rules do not mandate that litigants follow a particular sequence when employing the tools of discovery. *See* Fed. R. Civ. P. 26(d)(3)(A) ("[M]ethods of discovery may be used in any sequence."). Further, as discussed above, this argument is without factual merit as well since Movants admit that a rule 30(b)(6) deposition of the plaintiff would involve their input nonetheless, which may still impose an expense and inconvenience on their time.

In conclusion, the Court finds that Defendants are seeking relevant, needed testimony that is sufficiently narrow in its breadth and scope. The court also finds that Movants have not alleged an expense or inconvenience that outweighs those factors. Therefore, the Movants have not met their burden of proving the presence of an "undue burden" under Fed. R. Civ. P. 45(d)(3)(iv). For these reasons, Movants' motion to quash the subpoenas is DENIED.

2. **Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c)(1)**

Movants have also moved for a protective order under Fed. R. Civ. P. 26(c)(1). Fed. R. Civ. P. 26(c)(1) provides an avenue for persons from whom discovery is sought to seek a protective order against a discovery request. The rule requires that the motion be accompanied by a certification that the Movant has "conferred in good faith with the affected parties in an effort to resolve the discovery dispute." The motion presently before this Court fails to provide the required certification and that alone is sufficient to deny the motion. *See Brewster v. N.C. Dep't of Sec'y of State*, No. 5:18-CV-436, 2019 WL 1061660, at *2 (E.D.N.C. Mar. 6, 2019) ("The omission of the certification in the motion alone subjects them to summary denial."). Moreover, this Court doubts that Movants, in fact, complied with this requirement prior to seeking relief. The record shows that Movants were served with the Subpoena on October 31, 2022 and waited nearly a month to

respond and that response consisted solely of a notification to Defendants of an intention to file the motions currently under the consideration of this court. ECF No. 7-1 at 12. Since that is the only communication on the record, this court cannot conclude that any conference was held in good faith to resolve this dispute in advance of filing the present motion.

Even if the motion did contain the necessary certification, the court is disinclined to grant the motion since protective orders are discretionary based on a finding of "good cause" that such a motion is needed to protect the person from "annoyance, embarrassment oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The analysis for determining the "undue burden" of discovery request under Rule 26(c)(1) is the same as the analysis under Rule 45. *See Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008) ("Rules 45 and 26…cover the same ground."). As previously discussed, this Court does not find that the deposition subpoena would impose any undue burden on Masseth and Brennan. Accordingly, the motion for a protective order is DENIED.

## CONCLUSION

For the reasons stated herein, Movants' motion to quash and/or for a protective order (ECF No. 1) is DENIED.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: March 10, 2023
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York